# IN THE SUPREME COURT OF IOWA

No. 14–0426

Filed September 5, 2014

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**RICHARD CLAY MENDEZ,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends attorney be ordered to cease and desist practicing law in Iowa for sixty days. **ATTORNEY ORDERED TO CEASE AND DESIST FROM THE PRACTICE OF LAW IN IOWA FOR SIXTY DAYS.**

Charles L. Harrington and Nicholas Tré Critelli, Des Moines, for complainant.

Jeffrey David Norris of Law Office of Richard Mendez, Des Moines, and Valerie Lynn Hanna of Law Office of Valerie Lynn Hanna, Glendale, California, for respondent.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Richard Clay Mendez, charging numerous violations of Iowa's disciplinary rules. Mendez is not licensed to practice law in Iowa but acquired a Des Moines-based immigration practice and represented Iowa residents in federal immigration proceedings. A division of the Grievance Commission of the Supreme Court of Iowa determined Mendez violated certain rules governing trust accounts, fees, referrals, conflicts of interest, and neglect. The commission, with one member not participating in its deliberations, recommended we order Mendez to cease and desist from the practice of law in Iowa for a period of not less than sixty days, the period recommended by the Board. On our de novo review, we find Mendez violated our rules and order him to cease and desist from practicing law in Iowa for sixty days.

### I. Background Facts and Proceedings.

Mendez has been licensed to practice law in California since 1998, but is not admitted to the Iowa bar. He practices chiefly in California, most recently from an office in Burbank. His practice is primarily immigration law, with some criminal defense work. Mendez began practicing in Iowa in July 2011, when he took over two branches of an immigration practice, ASESAL Immigration Services. One branch of ASESAL was located in Des Moines and the other in Grand Island, Nebraska. Mendez assumed representation of ASESAL's clients and retained the majority of ASESAL's staff. He renamed both branches "Law Office of Richard Mendez."

Mendez stated that his Iowa practice is limited to providing legal services to Iowa residents on federal immigration matters, which is permitted by the Iowa Rules of Professional Conduct. *See* Iowa R. Prof'l

Conduct 32:5.5(d)(2) ("A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that . . . are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction."). Federal law allows a member in good standing of any state's bar to practice before the federal immigration court. *See* 8 C.F.R. §§ 1001.1(f), 1292.1(a)(1) (2011).

Mendez's handling of his Iowa immigration practice resulted in ethics complaints by clients, successor counsel, and ultimately the Board, arising out of the following matters.

**A. Trust Account Practices.** Shortly after purchasing the ASESAL offices, Mendez opened a client trust account, as required by the Iowa Court Rules and the Iowa Rules of Professional Conduct. *See* Iowa Ct. R. 45.10(2) ("Funds a lawyer receives from clients or third persons for matters arising out of the practice of law in Iowa shall be deposited in one or more identifiable interest-bearing trust accounts located in Iowa."); *see also, e.g.*, Iowa R. Prof'l Conduct 32:1.15(c). On August 31, Mendez and his Iowa counsel met with the director of the Office of Professional Regulation, the assistant director for boards and commissions for the Office of Professional Regulation, and the client security auditor. One of the purposes of the meeting was to discuss the need for Mendez to comply with Iowa's rules governing client trust accounts. Mendez was provided with a copy of the trust account rules. Those rules included requirements that an attorney provide notice and an accounting to clients upon withdrawing funds. Mendez concedes he failed to provide notices and accountings to forty-three clients upon withdrawal of funds.

**B. Nonrefundable Fees.** Mendez's written contracts with two clients, Rigoberto Flores and Miguel Angel Arechiga Cuellar, provided that Mendez could charge a $300 minimum fee merely for opening the file, regardless of whether any legal services were provided. The contracts stated: "ATTORNEY reserves the right to charge the minimum fee of $300 by opening the file, if that customer decides to end the contract before accumulating legal fees."

**C. Rigoberto Flores Representation.** In September 2011, Rigoberto Flores was charged with fraudulent practices in the third degree, in violation of Iowa Code section 714.11, and identity theft, in violation of Iowa Code section 715A.8. These offenses are aggravated misdemeanors. On September 16, Flores engaged Mendez to represent him and paid Mendez $1000 of their agreed $1500 flat fee for the criminal representation.

Mendez engaged an Iowa-licensed criminal attorney, John D. Hedgecoth, to enter an appearance on Flores's behalf. Mendez stated, "[I]t would have been easier to just refer him, but I facilitated the agreement for Mr. Hedgecoth to represent Mr. Flores in the criminal matter." Mendez and Hedgecoth orally agreed that Hedgecoth would be paid an hourly rate for his services from the $1000 Flores advanced to Mendez. When asked if he could give legal advice on criminal matters, Mendez responded, "Not on criminal matters as pertains to Iowa, but if it was criminal matters relating to immigration consequences, then yes, I believe so." Mendez testified he never told Flores that he was an Iowa-licensed attorney.

Mendez admits that he did not seek or receive Flores's written approval of the fee-splitting arrangement with Hedgecoth. He likewise failed to give Flores written notice of the withdrawal of any fees paid to

his firm or to Hedgecoth's firm. Hedgecoth's billing records show that he ultimately provided Flores with $558 of legal services, but Mendez's records reflect that he paid Hedgecoth $808 out of Flores's account. On top of the $558 paid to Hedgecoth, Mendez billed Flores $1370 for "administrative support." Flores paid Mendez a total of $1250, making Mendez's net on the case $442 after payments to Hedgecoth.

Flores ultimately entered guilty pleas on both charges. The Board asserts Mendez never personally spoke with Flores or Hedgecoth about the immigration implications of Flores's criminal case, and that Mendez did not advise Flores of the immigration consequences of entering a guilty plea to the charged offenses. Mendez asserts the disposition of Flores's case was unavoidable and denies the allegations that he never personally spoke with Flores and Hedgecoth about the immigration consequences of Flores's guilty pleas. A postconviction court later granted Flores relief, finding that his guilty pleas were not intelligent, knowing, and voluntary because Flores was not informed in Spanish of each guilty plea's potential impact on his immigration status.

When asked if he could explain his fee for administrative support, Mendez stated, "Mr. Flores came to the . . . office on, almost on a daily basis asking about his case . . . . I think we even sent interpreters to interpret for him . . . . And there was a lot of assistance there." These services were not itemized or noted in Flores's file. However, the postconviction relief ruling found that a legal assistant from Mendez's office attended Flores's initial meeting with Hedgecoth at the jail to act as a translator.

**D. Sergio Guaillas Representation.** Sergio Guaillas is a non-United States citizen who was initially represented by another attorney on a visa petition. Guaillas's petition was denied on September 8, 2011.

His letter of denial informed him that he had thirty-three days from the date of the letter, or until October 8, to file his notice of appeal.

On September 21, after terminating his first attorney's services, Guaillas spoke with a member of Mendez's staff and engaged Mendez to handle his appeal. That same day, someone in Mendez's office researched Guaillas's appeal.

Mendez failed to file the requisite notice of appeal by the October 8 deadline. Mendez testified he was unable to file the appeal because his office could not get the proper documents from Guaillas's previous attorney. Mendez further testified he orally informed Guaillas of his failure to file the notice of appeal and that this failure could constitute grounds for ineffective assistance of counsel and support a basis to reopen the matter. Nevertheless, Mendez could provide no documentation substantiating this assertion.

On February 16, 2012, Guaillas retained the services of yet another immigration attorney, James Benzoni. The same day, Benzoni provided Mendez with a formal request to transfer Guaillas's file. Mendez testified that he immediately mailed the file, but has no documentation of doing so. Benzoni did not receive the file. In late March, Benzoni again contacted Mendez asking for Guaillas's file. On April 24, Benzoni filed a disciplinary complaint against Mendez. On June 14, Mendez provided Benzoni with Guaillas's immigration file.

Guaillas filed his own disciplinary complaint against Mendez. In his response to this complaint, Mendez stated that he had met with Guaillas on September 21, 2011, and that "[a]fter consultation, Mr. Guaillas agreed to retain [him] as his attorney." Mendez's paralegal also submitted a declaration stating Guaillas signed a retainer agreement

with Mendez on September 21. Mendez testified at the hearing before the commission that he had met with Guaillas *before* November.

But, Mendez's internal billing and time records contradict his testimony. His records show the first time he personally met with Guaillas was well after the October 8 appeal deadline. The September 21 notation in the file states that Guaillas "spoke with RF," a staff member in the office. The first file notation indicating Mendez met with Guaillas is dated November 18, and Mendez's invoice to Guaillas includes a November 18 entry stating, "Attorney Richard Mendez met with Mr. Guaillas."

**E. Miguel Angel Arechiga Cuellar Representation.** On August 30, 2011, Immigration and Customs Enforcement apprehended Miguel Angel Arechiga Cuellar and detained him in the Polk County jail. On September 1, Arechiga's fiancée, Sandra Melendez, hired Mendez to represent Arechiga in a bond reduction hearing. According to the terms of the engagement agreement, Mendez charged a flat fee of $1500 for the bond reduction hearing.

That day, Mendez paid the $1500 flat fee on Arechiga's behalf. Mendez did not deposit the advance payment into his client trust account. In his written response to the Board's request for his trust account ledger for Arechiga and in his hearing testimony, Mendez attempted to justify his failure to do so by explaining that he did not think he needed to deposit the fee into his trust account "because part of the services w[ere] performed before and on the next two days after [he] was retained." Mendez also failed to notify Arechiga for any withdrawal of fees.

Arechiga was incarcerated at the time of Mendez's retention and wanted a bond reduction hearing as soon as possible so that he could be

released from custody. One of Mendez's staff visited Arechiga at the Polk County jail on September 1, and a paralegal and attorney followed up with Arechiga to complete some paperwork. A paralegal twice contacted the deportation office, apparently to no avail. Mendez's billing records for September 11 refer to a call regarding paperwork for Arechiga. But, Mendez did not file any documents requesting the bond reduction hearing. Mendez testified, "[I]f immigration doesn't process the person, then there's nothing I can—I can do, it's out of my control. I can only respond once they are in the system."

A month later, on September 30, Arechiga was released from custody after posting the full amount of his original bail. On October 1, Arechiga and Melendez went to Mendez seeking a refund. Not until May 19, 2012—after Arechiga filed a disciplinary complaint—did Mendez issue any refund. During the interim, Mendez did not retain the funds in his client trust account. Mendez ultimately returned $1200 of the $1500 Melendez had paid.

**F. Roberto Macedo-Davila Representation.** In April of 2011, Roberto Macedo-Davila engaged the services of ASESAL to represent him in immigration matters. The contract provided that Macedo-Davila was to pay a total of $4000, with $1000 paid in advance on April 21 and the remaining money to be paid in increments of $150 monthly commencing May 30. In July, Mendez "took over" ASESAL and incorporated it into his own law firm. Macedo-Davila continued to make monthly cash payments of $150 after this transition, and Mendez accepted these payments. Mendez did not, however, deposit these payments into his client trust account.

An itemization of services provided by Mendez to Macedo-Davila indicates that, during the months of July through December, Mendez

"reviewed [the] case, updated files and made calls" for one and one-half hours each month. Mendez charged $150 for each of these instances— the exact amount paid by Macedo-Davila each month. Mendez admitted that he did not know exactly what services had been provided for these funds.

**G. Orlando Ramirez Barragan Representation.** In April 2011, Orlando Ramirez Barragan retained ASESAL to represent him in immigration matters. Barragan was to pay a total of $4000, with $1000 paid in advance on April 9 and the remaining money paid in monthly increments of $200 commencing May 15. Barragan continued to make monthly payments of $200 after July, when Mendez took over ASESAL. Mendez failed to deposit these payments into his client trust account.

On August 31, Barragan was scheduled for a 9 a.m. immigration hearing in Omaha, Nebraska. Mendez was in California that day. Natalia Lazareva, an attorney in Mendez's office, prepared for the hearing and met Barragan in Omaha. Upon arriving at the location of the hearing, Lazareva was informed that the scheduled judge was absent due to illness and Barragan's hearing was rescheduled to 1 p.m. that afternoon. Lazareva informed Barragan of this change, and Barragan left the building. Upon returning shortly before 1 p.m., Barragan discovered that the hearing had not been rescheduled, but had been held that morning without Barragan or Lazareva present, and the judge had ordered Barragan removed in absentia. Barragan was in fact removed. Mendez billed Barragan $625 for Lazareva's legal services that day.

One remedy for an order of removal in absentia is the filing of a motion to reopen based on ineffective assistance of counsel. *See Matter of Lozada*, 19 I.&N. Dec. 637, 639 (BIA 1988). One of the prerequisites for obtaining relief on that basis is that the motion to reopen states

whether a complaint has been filed with appropriate disciplinary authorities with respect to an ethical or legal violation, and if not, why not. *Id.* Mendez failed to advise Barragan to seek alternate counsel to file such a disciplinary complaint.

Instead, Lazareva, with Mendez's approval, continued to represent Barragan and filed a motion to reopen. Mendez testified that filing a complaint and pursuing relief based on ineffective assistance of counsel was "just one of several options." Lazareva's motion to reopen asked for relief because of "rescheduling confusion." On October 27, the immigration court denied Lazareva's motion, finding "the respondent has not advanced either credible or persuasive evidence to support his assertion that his failure to appear at his removal hearing was due to exceptional circumstances beyond his control."

Without Barragan's knowledge or consent, Mendez then hired a California immigration attorney, Tina Malek, to prepare a second motion to reopen. Malek did not file a complaint against Mendez before filing this second motion to reopen. The court, in ruling on Malek's motion, noted that it was based upon the alleged ineffective assistance of former counsel,[1] which requires:

> (1) that the motion be supported by an affidavit of the allegedly aggrieved respondent setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard, (2) that counsel whose integrity or competence is being impugned be informed of the allegations leveled against him and be given an opportunity to respond, and (3) that the motion reflect whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not.

---

[1] A copy of Malek's motion to reopen is not in the record.

Because Malek had not filed a complaint against Mendez, the immigration court denied the second motion to reopen on January 9, 2012.

Mendez then had Malek file an appeal of the denial with the Board of Immigration Appeals (BIA). The BIA denied Barragan's appeal on September 19, again due to lack of a disciplinary complaint and other necessary evidence. Mendez paid Malek $910 from Barragan's funds for filing the second motion to reopen and appealing the denial of that motion. Mendez billed Barragan an additional $700 for services relating to the motions to reopen.

On September 23, 2013, the Board filed a six-count complaint against Mendez, alleging violations of our disciplinary rules in the foregoing matters. A five-member division of the commission conducted a two-day evidentiary hearing on January 6–7, 2014. Mendez testified, and documentary evidence was submitted by the Board. Posthearing briefs were then submitted. On March 14, the commission filed its "Findings of Fact, Conclusions of Law, and Sanction Recommendation." The commission, by a four-to-zero vote, found multiple violations by Mendez and recommended that he be barred from practicing law in Iowa for sixty days. A footnote stated, "One panel member was unable to participate in the deliberations concerning the recommendation in this matter." No further information is provided to explain why one panelist did not participate in the recommendation.

## II. Scope of Review.

We review attorney disciplinary proceedings de novo. *See* Iowa Ct. R. 35.12(4). "We give deference to the commission's credibility findings because the commission hears live testimony and observes the demeanor of witnesses." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ouderkirk*, 845

N.W.2d 31, 33 (Iowa 2014). The Board has the burden to prove attorney misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 113 (Iowa 2014). "This standard is more demanding than proof by preponderance of the evidence, but less demanding than proof beyond a reasonable doubt." *Ouderkirk*, 845 N.W.2d at 33.

> If we conclude there has been a rule violation,
>
> our determination of the appropriate sanction "is guided by the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and [the attorney's] fitness to continue in the practice of law."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Laing*, 832 N.W.2d 366, 367–68 (Iowa 2013) (alteration in original) (quoting *Comm. on Prof'l Ethics & Conduct v. Kaufman*, 515 N.W.2d 28, 30 (Iowa 1994)). "We respectfully consider the commission's findings of fact and recommended sanction, but we are not bound by them." *Ouderkirk*, 845 N.W.2d at 33.

### III.  Ethical Violations.

The commission found the Board proved over sixty violations, but did not meet its burden to prove five other alleged violations. In his challenge to the commission's recommendation, Mendez makes three general arguments: (1) "there has been no legal criteria advanced to define who or what constitutes an Iowa client when there is obvious cross jurisdictional practice going on with Nebraska"; (2) "Nebraska holds a different position than Iowa on how flat fees for Nebraska immigration clients should be handled and it is permissible to deposit them into the attorney's general account upon receipt"; and (3) he has "been deprived of a properly constituted panel wherein the original 5 selected to consider all evidence and testimony, was without warning or consultation,

diminished to 4 in deliberations depriving [him] of yet another voice in final deliberations."

None of these arguments excuses Mendez's violations of our state's disciplinary rules. We will address each argument in turn. First, the clients at issue were living in Iowa and retained Mendez through his Des Moines office. A commissioner stated at the hearing:

> I think we have the right to assume, not seeing any notations to the contrary in your itemizations of services, that the work that you performed for the various named clients did occur here in Iowa. I don't see why somebody who is domiciled in Des Moines would hire someone that would require them to travel to Nebraska to get an answer on a particular legal question.

Mendez agreed with this statement. We find that Mendez has provided legal services in Iowa on the matters at issue. We hold that jurisdiction therefore exists pursuant to Iowa Rule of Professional Conduct 32:8.5(a). That rule states:

> Disciplinary Authority. . . . A lawyer not admitted in Iowa is . . . subject to the disciplinary authority of Iowa *if the lawyer provides or offers to provide any legal services in Iowa.* A lawyer may be subject to the disciplinary authority of both Iowa and another jurisdiction for the same conduct.

Iowa R. Prof'l Conduct 32:8.5(a) (emphasis added). "Our jurisdiction to discipline attorneys practicing in Iowa under rule 32:5.5(d)(2) rests on our responsibility to protect the citizens of our state from unethical conduct of attorneys *who provide services in Iowa.*" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 267 (Iowa 2010) (emphasis added); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Olson,* 807 N.W.2d 268, 270, 276 n.7 (Iowa 2011) (finding jurisdiction over Minnesota counsel based on the conduct of communicating with an Iowa resident located in Iowa).

Second, the fact that Nebraska's ethical rules differ from Iowa's does not excuse a violation of Iowa's ethical rules for legal services provided in Iowa. Mendez operated an office in Iowa, and it was incumbent on him to learn and follow Iowa's rules when assisting clients here.

Mendez's third argument about the loss of a panel member also lacks merit. The Iowa Court Rules generally require the grievance commission panel to consist of at least five members. *See* Iowa Ct. R. 35.1(1) ("The grievance commission shall also consist of no fewer than 5 nor more than 35 laypersons appointed by the court."); *id.* r. 36.2 ("The commissioners may act as a body or in such divisions as the chair may direct. Each division shall consist of five members."). Iowa Court Rule 36.17, however, states that "[a]n omission, irregularity, or other defect in procedure shall not render void or ineffective any act of the commission or a division or any member thereof unless substantial prejudice is shown to have resulted."

We find Mendez was not prejudiced by the fact one panel member did not deliberate. Rule 35.10 provides that "[a]ny determination or report of the commission need only be concurred in by a majority of the commissioners sitting." *Id.* r. 35.10; *see also In re Paulson*, 216 P.3d 859, 876 (Or. 2009) (noting a third disciplinary panel member's failure to sign a disciplinary opinion did not prejudice attorney because the decision only required two concurring members), *opinion adhered to as modified on reconsideration*, 225 P.3d 41, 42 (Or. 2010). Even if the fifth panel member had participated in deliberations and *dissented*, the commission's four other voting members constituted the requisite majority. *See* Iowa Ct. R. 35.10 (noting also that "[a]ny commissioner has the right to file with the supreme court a dissent from the majority

determination or report"); *cf. Paulson,* 216 P.3d at 876 (concluding missing panel member was "effectively . . . in the position of an abstaining panel member" that "did not join in the opinion and . . . did [not] dissent").

Mendez's argument that he was "depriv[ed] of yet another voice in final deliberations" does not require a new hearing. *See Comm. on Prof'l Ethics & Conduct v. Michelson,* 345 N.W.2d 112, 117 (Iowa 1984) ("He was afforded a full-blown hearing and there is no indication that the outcome of the hearing was affected."); *Paulson,* 216 P.3d at 876 ("We might reach a different conclusion if the irregularity were shown to have prejudiced the accused. But here, there is no prejudice."). Mendez has not shown participation of the fifth panelist likely would have changed the recommendation. In any event, our court has examined the record de novo and we are not bound by the commission's recommendations. *Ouderkirk,* 845 N.W.2d at 33. Accordingly, Mendez is not entitled to relief on this ground.

**A. Trust Account Violations Involving Forty-Three Clients.** The Board charged Mendez with violating Iowa Court Rule 45.7(4) with regard to forty-three clients. Rule 45.7(4) provides:

> A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal.

Iowa Ct. R. 45.7(4). Mendez admitted he did not comply with rule 45.7(4), and the commission found he violated that rule as to those forty-three clients. We agree with the commission and find Mendez violated rule 45.7(4) with regard to those forty-three clients.

The Board also charged Mendez with several trust-account-related violations involving the clients specifically discussed above. Iowa Rule of Professional Conduct 32:1.15(c) provides: "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Iowa Court Rule 45.10(2) provides: "If the client makes an advance payment of a flat fee prior to performance of the services, the lawyer must deposit the fee into the trust account." Those allegations are summarized as follows:

> (1) Mendez violated rules 32:1.15(c) and 45.10(2) by failing to deposit Flores's $1000 payment into his trust account and rule 45.7(4) by failing to provide the requisite notices to Flores when he withdrew fees;
>
> (2) Mendez violated rules 32:1.15(c) and 45.10(2) by failing to deposit Arechiga's $1500 payment into his trust account and rule 45.7(4) by failing to provide the requisite notices to Arechiga when he withdrew fees;
>
> (3) Mendez violated rules 32:1.15(c) and 45.10(2) by failing to deposit Macedo-Davila's monthly payments into his trust account;
>
> (4) Mendez violated rules 32:1.15(c) and 45.10(2) by failing to deposit Barragan's monthly payments into his trust account.

The commission found Mendez committed each of these rule violations. On our de novo review, we agree that Mendez violated each of these rules as charged by the Board.

**B. Nonrefundable Fees in Flores and Arechiga Representations.** The Board alleged, and the commission found, Mendez violated Iowa Rule of Professional Conduct 32:1.15(c) and Iowa Court Rule 45.7(5) by representing in his fee agreement with Flores and Arechiga that he was entitled to a nonrefundable fee of $300 for "opening the file," even if he did not provide any legal services. Rule 45.7(5) states, "Notwithstanding any contrary agreement between the lawyer and client,

advance fee and expense payments are refundable to the client if the fee is not earned or the expense is not incurred." Iowa Ct. R. 45.7(5). Mendez admitted that his contracts with Flores and Arechiga contained impermissible, nonrefundable fees.

We find Mendez violated rules 32:1.15(c) and 45.7(5). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs*, 671 N.W.2d 470, 475 (Iowa 2003) ("[C]ontracts providing for nonrefundable special retainers and nonrefundable 'flat' fees are void as well as unethical."). As we have long recognized, nonrefundable fees undermine the client's right to discharge an attorney. *Id.* at 476. "[C]lients would be reluctant to exercise the right if an advance fee was nonrefundable" and nonrefundable fees "also undermine the fiduciary nature of an attorney–client relationship." *Id.*

### C. Rigoberto Flores Representation.

1. *Unauthorized practice of law.* While Mendez is allowed to practice immigration law in Iowa, he is not authorized to defend criminal charges in our state courts. The Board alleged that Mendez engaged in the unauthorized practice of law by representing Flores in his state criminal case. Iowa Rule of Professional Conduct 32:5.5(a) states, "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction . . . ." The commission highlighted that "the amount of fees in question is de minimus" and concluded that, "given the way the criminal case played out," the Board did not meet its burden to prove Mendez violated rule 32:5.5(a).

Mendez contends his representation of Flores was proper because he only "facilitated" an Iowa-licensed attorney's representation and because the fees he charged were for "administrative support." The

record reflects that Mendez provided translation services for Flores on at least one occasion, and Mendez is authorized to advise clients as to the immigration consequences of criminal proceedings. We agree with the commission that the Board failed to prove by a convincing preponderance of the evidence that Mendez violated rule 32:5.5(a) through his involvement with the Flores case.

2. *Unreasonable fee.* The Board next asserts Mendez collected an unreasonable fee in violation of rule 32:1.5. Iowa Rule of Professional Conduct 32:1.5(a) prohibits a lawyer from "mak[ing] an agreement for, charg[ing], or collect[ing] an unreasonable fee or an unreasonable amount for expenses." The Board presents two rationales for finding Mendez violated this rule. First, based on its belief that Mendez's representation of Flores was outside the scope of his permissible practice, the Board charged Mendez with collecting an unreasonable fee. Because we find the Board failed to prove Mendez engaged in the unauthorized practice of law, we find his fee was not unreasonable on this basis.

However, we agree with the Board's second argument. The Board asserts that Mendez collected an unreasonable fee by paying Hedgecoth $808 from Flores for his services while Hedgecoth's billing records show that he provided Flores with only $558 of legal services. The commission found Mendez violated Iowa Rule of Professional Conduct 32:1.5(a) and (e) by using Flores's money to pay Hedgecoth more than was earned. Rule 32:1.5(e)(3) provides "[a] division of a fee between lawyers who are not in the same firm may be made only if . . . the total fee is reasonable." Iowa R. Prof'l Conduct 32:1.5(e)(3). Because Mendez collected from Flores and paid Hedgecoth more than he had earned, we agree Mendez violated rule 32:1.5(a) and (e)(3).

3. *Improper division of fees.*  The Board charged Mendez with the improper division of fees based on his arrangement with Hedgecoth. Iowa Rule of Professional Conduct 32:1.5(e)(2) states that a lawyer may divide fees with a lawyer in a different firm only upon receiving the client's written agreement to the fee division.  Mendez did not receive written approval from Flores for the fee-splitting agreement.  The commission found Mendez violated this rule, and we agree.

4. *Failure to communicate.*  Finally, the Board alleged Mendez violated Iowa Rule of Professional Conduct 32:1.4 by failing to properly advise Flores of the immigration consequences of entering a guilty plea. Rule 32:1.4 requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  Iowa R. Prof'l Conduct 32:1.4(b).  The commission found the Board failed to prove this allegation by a convincing preponderance of the evidence.  We agree with the commission.  We are not persuaded on this record that Mendez failed to discuss with Flores the immigration consequences of his pleas.  The postconviction court ruling that granted Flores relief from his guilty plea only mentioned Mendez in passing.  The ruling focused on the guilty plea proceedings handled by Hedgecoth and the fact that the plea colloquy was not translated into Spanish to ensure Flores understood the consequences.  Mendez testified that he did indeed discuss the immigration consequences with Flores, and the Board has failed to rebut Mendez's testimony on that point.

**D.  Sergio Guaillas Representation.**

1. *False statement of material fact.*  The Board charged Mendez with making a false statement of material fact in connection with a disciplinary matter, in violation of Iowa Rule of Professional Conduct

32:8.1(a). Rule 32:8.1 provides, "[A] lawyer . . . [,] in connection with a disciplinary matter, shall not . . . knowingly make a false statement of material fact[.]" Iowa R. Prof'l Conduct 32:8.1(a). Mendez asserts that he met with Guaillas on September 21, but the Board contends this is untrue and Mendez did not meet with Guaillas until November 18. The commission found a violation of this rule. As the commission summarized,

> Mendez's written and oral recollections are the only evidence presented in support of his position on this point. His time and billing records tell a different story. In fact, Mendez's own billing records show that Mendez did not meet with [Guaillas] until November 18, 2011 . . . .

The commission found Mendez's version of events not credible. "We give deference to the commission's credibility determination because the commission heard [Mendez]'s live testimony and observed his demeanor." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 659 (Iowa 2013). Nevertheless, we give less weight to the documentary evidence in this context. Mendez had a high volume immigration practice. It is not uncommon for attorneys to meet a new client in person and hand him off to a paralegal to conduct the initial interview, with the attorney not billing for an attorney–client conference on the day of the client's initial office visit. We find the Board failed to prove by a convincing preponderance of the evidence that Mendez violated rule 32:8.1(a) by misrepresenting the date that he first met with Guaillas.

2. *Neglect.* The Board charged Mendez with a violation of Iowa Rule of Professional Conduct 32:1.3 for failing to file Guaillas's notice of appeal by the deadline, and the commission found Mendez violated that rule. Rule 32:1.3 states, "A lawyer shall act with reasonable diligence

and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3.

A comment to rule 32:1.3 emphasizes the importance of diligence:

> Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed.

*Id.* r. 32:1.3 cmt. 3. The commission did not credit Mendez's excuse that he was unable to file the appeal because he could not get some necessary documents from Guaillas's former counsel. Giving deference to the commission's credibility determination, we likewise find his excuse unconvincing. We find Mendez violated rule 32:1.3 by neglecting Guaillas's appeal.

3. *Failure to communicate.* The Board alleged that Mendez neglected to tell Guaillas that he had failed to file the notice of appeal and that this failure could serve as grounds for ineffective assistance of counsel and support a basis to reopen the matter. The Board charged Mendez with violating Iowa Rule of Professional Conduct 32:1.4, which requires attorneys to "keep the client reasonably informed about the status of the matter" and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." *Id.* r. 32:1.4(a)(3), (b). The commission found Mendez violated rule 32:1.4. Again, giving deference to the commission's determination, we agree Mendez violated this rule.

4. *Failure to turn over file.* The Board charged Mendez with violating Iowa Rules of Professional Conduct 32:1.15(d) and 32:1.16(d) for failing to promptly turn over Guaillas's file to Benzoni, and the commission found a violation of these rules. Rule 32:1.15(d) states "a lawyer shall promptly deliver to the client or third person any funds or

other property that the client or third person is entitled to receive." *Id.* r. 32:1.15(d). Rule 32:1.16(d) states that, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled." *Id.* r. 32:1.16(d). Benzoni received Guaillas's file only after he filed a disciplinary complaint against Mendez—four months after the initial request. Mendez testified that he immediately sent the file but could provide no documentation supporting his testimony. The commission found Mendez's testimony not credible on this point. So do we. We find Mendez violated rules 32:1.15(d) and 32:1.16(d) by failing to promptly deliver Guaillas's file.

**E.  Miguel Angel Arechiga Cuellar Representation.**

1. *Neglect.* The Board alleges, and the commission found, Mendez violated Iowa Rule of Professional Conduct 32:1.3 by failing to file any documents requesting a bond reduction hearing for Arechiga. As discussed above, rule 32:1.3 requires reasonable diligence and promptness. *See id.* r. 32:1.3.

A member of Mendez's staff visited Arechiga at the jail on the day the firm was retained, an attorney and paralegal followed up with Arechiga to complete paperwork, a paralegal twice contacted "the Deportation Office," and someone in the firm took a call regarding Arechiga's paperwork. Mendez testified he could not request a bond reduction hearing because Arechiga had not been processed by the immigration court. The Board did not present any expert testimony or other evidence to rebut Mendez's assertion. We conclude the Board has failed to prove by a convincing preponderance of the evidence that Mendez's representation of Arechiga violated rule 32:1.3.

2. *Failure to refund fees and retain disputed fees in trust.* The Board charged Mendez with a violation of rule 32:1.15(d) for failing to promptly return Arechiga's funds along with an accounting of services rendered and with a violation of rule 32:1.15(e) for failing to retain disputed funds in trust. The commission found Mendez violated both of these rules. We agree. Iowa Rule of Professional Conduct 32:1.15(d) requires an attorney to

> promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Rule 32:1.15(e) states:

> When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

*Id.* r. 32:1.15(e). Mendez did not refund Arechiga's payment until seven months after Arechiga first requested the refund. During this time, Mendez did not retain Arechiga's payment in his client trust account.

**F. Roberto Macedo-Davila Representation.** The Board alleges Mendez violated rules 45.7 and 45.10(3) by taking an unearned fee from Macedo-Davila. Rule 45.10(3) states, "In no event may the lawyer withdraw unearned fees." Iowa Ct. R. 45.10(3). The commission concluded "[w]hile certain inferences adverse to Mendez could be drawn from the evidence presented, the preponderance standard does not permit such an inquiry." Accordingly, the commission found the Board did not prove Mendez violated rules 45.7 and 45.10(3). We agree. The Board did not present any evidence to rebut Mendez's billing records,

which indicate someone in Mendez's office "reviewed [Macedo-Davila's] case, updated files and made calls" each month.

### G. Orlando Ramirez Barragan Representation.

1. *Unreasonable fee.* The Board charged Mendez with collecting an unreasonable fee from Barragan, in violation of Iowa Rule of Professional Conduct 32:1.5(a). The Board takes issue with the fact that Mendez billed Barragan $625 for the Omaha hearing, despite the fact that Lazareva missed the hearing. The commission found the Board did not carry its burden to prove Mendez violated rule 32:1.5(a). The commission stated:

> While it is true that Ms. [Lazareva] missed the hearing, she prepared for it and traveled to and from Omaha to attend it. We think Mendez's firm is reasonably entitled to compensation for her efforts even though she missed the hearing.

The Board did not assert that Lazareva or Mendez was to blame for missing the hearing. On this record, we agree with the commission and find the Board failed to prove by a convincing preponderance of the evidence that Mendez violated rule 32:1.5(a) by charging Barragan for the time Lazareva spent in Omaha.

2. *Failure to communicate and conflict of interest.* The Board alleges Mendez violated Iowa Rules of Professional Conduct 32:1.4(b) and 32:1.7(a)(2) by failing to inform Barragan that he should retain alternate counsel and file a disciplinary complaint against Mendez's firm in order to reopen his immigration matter. Again, rule 32:1.4 governs communication and requires an attorney to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Iowa R. Prof'l Conduct 32:1.4(b). Rule 32:1.7(a)(2) instructs a lawyer to withdraw from representation if

"there is a significant risk that the representation of [the client] will be materially limited by . . . a personal interest of the lawyer." *Id.* r. 32:1.7(a)(2). The commission found Mendez violated both of these rules.

We too find Mendez violated rules 32:1.4(b) and 32:1.7(a)(2) by failing to withdraw from representation and inform Barragan that he should file a disciplinary complaint. When faced with nearly identical facts in *Iowa Supreme Court Attorney Disciplinary Board v. Yang*, we found a violation of rule 32:1.4(b) because "Yang owed his client an explanation of the alternative course of action because it was reasonably necessary to permit [the client] to make an informed decision on the matter." 821 N.W.2d 425, 430 (Iowa 2012). We also found the failure to withdraw under these circumstances violates rule 32:1.7(a)(2) because, "[i]n continuing the representation . . . without disclosure of the apparent conflict of interest, Yang ignored a significant risk that the representation would be materially limited by Yang's personal interest in avoiding a potential ethical complaint." *Id.*

Lazareva did not file a disciplinary complaint against herself or arrange for anyone else to file such a complaint against her on Barragan's behalf before she filed the first motion to reopen Barragan's case. Accordingly, the court denied Lazareva's motion to reopen. The outside counsel retained by Mendez similarly failed to file a disciplinary complaint, as made clear in the rulings denying both the second motion to reopen and the appeal of that motion. Had Mendez informed Barragan of the need to retain independent counsel, rather than pursuing these ineffective appeals, Barragan may have successfully reopened his case and avoided removal. "Although this may be speculative, the fact remains that [the attorney's conflict of interest] denied [the client] the

opportunity to make an informed choice." *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner*, 599 N.W.2d 721, 730 (Iowa 1999).

3. *Improper referral, improper division of fees, and unreasonable fee.* Also in connection with the futile motions to reopen, the Board charged Mendez with (1) billing an unreasonable fee, in violation of rule 32:1.5(a); (2) improperly dividing fees with outside counsel, in violation of rule 32:1.5(e); and (3) improperly referring Barragan to outside counsel, in violation of rule 32:1.6. The commission found Mendez violated each of these rules. Mendez did not receive Barragan's written agreement to the fee division between Mendez and outside counsel. *See id.* r. 32:1.5(e)(2). Nor did he not obtain Barragan's consent to retain outside counsel to pursue Barragan's motion to reopen. *See* Iowa R. Prof'l Conduct 32:1.6(a) (setting forth general rule that a lawyer "shall not reveal information relating to the representation of a client unless the client gives informed consent"). Mendez conceded as much, testifying, "I guess I was in such a rush to try to get this reopened, I may have cut some corners there. . . . I should have had that all in writing." In total, Mendez billed Barragan $1610 for unproductive attempts to reopen his case. We find Mendez violated rules 32:1.5(a), 32:1.5(e)(2), and 32:1.6(a).

**IV. Sanction.**

Although we consider prior cases when imposing a sanction, "[t]here is no standard sanction for particular types of misconduct." *Clarity*, 838 N.W.2d at 660. We consider the unique circumstances of each case, weighing several factors, such as

> "the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart,* 827 N.W.2d 169, 182 (Iowa 2013)).

The commission recommended we order Mendez to cease and desist from the practice of law in Iowa for a period no shorter than sixty days.[2] We give respectful consideration to this recommendation. *See Ouderkirk,* 845 N.W.2d at 33. The Board urged the same sixty-day sanction in its posthearing brief. Mendez argues a public reprimand is an appropriate sanction. He argues, "I have spent my entire career serving the disenfranchised seeking asylum and immigration status in this country and it is my desire to continue to follow this path."

We conclude the numerous violations committed by Mendez require more than a public reprimand. His violations span a wide variety of rules. He disregarded our trust account rules, impermissibly contracted for nonrefundable fees, charged an unreasonable fee, improperly divided fees, neglected a client's appeal, failed to promptly turn over a client's file, failed to return funds promptly, failed to keep disputed funds in trust, failed to communicate with a client, and failed to disclose a conflict of interest.

The commission accurately recited the mitigating circumstances in this case: "Cooperating with the Board is generally considered a mitigating factor, and Mendez did. Mendez also serves a vulnerable

---

[2][W]hen a non-Iowa licensed attorney commits misconduct that typically warrants a sanction directly affecting licensure, such as suspension or revocation, such sanctions are not feasible because there is no Iowa law license to suspend or revoke. Nevertheless, like our sister courts, we conclude our authority to discipline non-Iowa licensed attorneys includes the ability to fashion practice limitations through our injunctive and equitable powers that are equivalent to license suspension, disbarment, or other sanctions related to an attorney's license.

*Carpenter,* 781 N.W.2d at 269–70.

population, many of whom do not speak English and are unfamiliar with the American legal system." We agree these are mitigating factors here. *See Yang*, 821 N.W.2d at 431 (noting as mitigating factors the attorney's "substantial service to the immigrant community and his complete cooperation with the Board's investigation").

Several aggravating factors are also present. First, several officials from the Office of Professional Regulation met with Mendez when he was new to Iowa to explain our trust account requirements to him. Nevertheless, he proceeded to flout those requirements. The commission appropriately faulted Mendez for his "total lack of appreciation for the Iowa trust account rules and how they apply to his practice." Indeed, when asked at the end of the hearing if he had read the Iowa Rules of Professional Conduct, Mendez responded:

> I haven't actually sat down and read them. I've consulted with counsel. . . . It's no excuse, but perhaps sometimes, you know, you get bogged down in day-to-day serv[ing] your clients, your cases, personal life, you know those things. So I haven't sat down and really opened it up and read the different sections.

We find it remarkable that even by the late date of his disciplinary hearing, Mendez still had not yet read the Iowa rules he was charged with violating.

Second, the harm Mendez caused several clients is an aggravating factor. *See Clarity*, 838 N.W.2d at 660 (finding it significant an attorney's actions caused harm to clients, both in terms of cost and delay). The commission correctly discounted Mendez's argument that no clients were harmed by his conduct:

> First, [Guaillas] was harmed in some aspects because he was denied the opportunity for relief by Mendez's failure to file his appeal. Second, Barragan suffered serious harm as a result of a member of Mendez's firm missing his immigration

hearing. Finally, we are also mindful that while Mendez's other clients may not be aware that they were harmed by his billing tactics, this does not mean that they received all of the services he billed them for.

We also note that Barragan suffered harm due to Mendez's failure to inform him that he needed to file a complaint against the firm in order to proceed with his motion to reopen.

Finally, at the hearing, Mendez blamed other attorneys for the client complaints against him. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera,* 560 N.W.2d 592, 595 (Iowa 1997) ("[W]e have a strong negative reaction to a lawyer's attempt to blame professional shortcomings on [another]."); *Comm. on Prof'l Ethics & Conduct v. Postma,* 430 N.W.2d 387, 389 (Iowa 1988) (noting that blaming others for failings is a "timeworn excuse" that is viewed with "unbounded skepticism, and never with admiration"). Mendez portrays himself as the victim of a confusing set of ethical rules imposed as a result of his voluntary purchase of a federal immigration practice located in Iowa and his service to clients residing in Iowa. We are unimpressed by his failure to take responsibility for his ethical breaches. As the commission accurately observed, "Mendez does not fully appreciate the seriousness of his transgressions or his obligations to follow the Iowa Rules of Professional Conduct when representing Iowa residents in any legal matter."

We also find Mendez's violation of our conflict-of-interest rules in the Barragan matter significant in light of his other violations. In *Yang,* we merely imposed a public reprimand as recommended by the commission for the same conduct—failing to advise the client of the option to retain new counsel to file a complaint alleging ineffective assistance of counsel as a ground to reopen the immigration hearing.

821 N.W.2d at 430–31. But, *Yang* involved an isolated violation, not the array of violations committed by Mendez involving numerous clients. *See id.* at 429. Suspensions in other cases for conflict-of-interest violations in combination with other ethical breaches typically fall in the two-to-four-month range. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Qualley*, 828 N.W.2d 282, 293–94 (Iowa 2013) (sixty-day suspension for attorney who, among other things, violated conflict of interest rules); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Zenor*, 707 N.W.2d 176, 182, 187 (Iowa 2005) (imposing a four-month suspension when attorney represented opposing entities, among other violations); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 378, 382 (Iowa 2005) (same); *Wagner,* 599 N.W.2d at 723–24 (imposing a three-month suspension when attorney failed to inform the client of the attorney's financial interest in a transaction); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sikma*, 533 N.W.2d 532, 537–38 (Iowa 1995) (imposing a three-month suspension on attorney who engaged in undisclosed business transactions with a client). *But see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 600–02, 607 (Iowa 2011) (imposing a two-year suspension when attorney engaged in a conflict of interest with his client, among other violations).

Mendez has also flouted our trust account rules, which in combination with his other ethical breaches warrants a suspension. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy*, 684 N.W.2d 256, 261 (Iowa 2004) (sixty-day suspension for neglect, trust account and accounting violations, and failure to cooperate, in light of mitigating factors); *Frerichs*, 671 N.W.2d at 477–78 (four-month suspension for neglect, an illegal fee accompanied by a trust account violation, failure to provide an accounting, and failure to cooperate)*; Iowa Supreme Ct. Bd. of*

*Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 166–68 (Iowa 2003) (three-month suspension for neglect, failure to make accounting, and failure to cooperate); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams*, 623 N.W.2d 815, 818–19 (Iowa 2001) (three-month suspension for neglect, failure to deposit a fee into a trust account, failure to account for client property, and misrepresentation to the client in an effort to cover up the neglect).

Considering all these factors, and giving weight to the commission's recommendation, we determine that a sixty-day suspension is appropriate.

## V. Disposition.

We order Mendez to cease and desist from all legal practice in Iowa indefinitely with no possibility that the order will be lifted for a period of sixty days. Mendez shall provide all notifications specified in Iowa Court Rule 35.23. In addition, costs are taxed to Mendez pursuant to Iowa Court Rule 35.27(1).

For purposes of having the cease-and-desist order lifted, as well as for all other purposes, Mendez shall be treated as though he has been suspended. *See* Iowa Ct. R. 35.13. This sanction shall be conveyed to the California state disciplinary authority, the Executive Office for Immigration Review, and other disciplinary authorities as appropriate for their consideration.

**ATTORNEY ORDERED TO CEASE AND DESIST FROM THE PRACTICE OF LAW IN IOWA FOR SIXTY DAYS.**