# IN THE SUPREME COURT OF IOWA

No. 15–0894

Filed September 11, 2015
Amended September 11, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JOSEPH MICHAEL HASKOVEC,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

On review of the report of the Grievance Commission of the Supreme Court of Iowa, we find the attorney violated a rule of the Iowa Rules of Professional Conduct and publically reprimand the attorney. **ATTORNEY REPRIMANDED.**

Charles L. Harrington and Patrick W. O'Bryan, Des Moines, for complainant.

Roger Sutton, Charles City, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against an attorney alleging two violations of the Iowa Rules of Professional Conduct for the attorney having a witness sign a will outside the presence of the testator and the other witness and then giving the will to the executor to probate without disclosing this fact. A division of the Grievance Commission of the Supreme Court of Iowa found the attorney's conduct violated two rules and recommended we give him a public reprimand. On our de novo review, we find the attorney violated only one of our rules. But we nonetheless publicly reprimand the attorney for his conduct.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crum*, 861 N.W.2d 595, 599 (Iowa 2015). The Board has the burden to prove violations by a convincing preponderance of the evidence. *Id.* " 'A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 532 (Iowa 2013)). Lastly, the commission's findings and recommendations are not binding on our decision. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 470 (Iowa 2014).

The attorney admitted most of the Board's factual allegations in his answer to the complaint. We deem factual matters admitted by an attorney in an answer to a complaint established without further investigation into the record. *Nelson*, 838 N.W.2d at 532.

In its brief, the Board set forth substantial facts. In his brief, the attorney stipulated to most of the facts set forth by the Board.

Stipulations of facts are also binding on the parties. *Id.* "We interpret such stipulations 'with reference to their subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved.' " *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf,* 793 N.W.2d 525, 528 (Iowa 2011)).

The attorney also stipulated in his brief that he violated two Iowa Rules of Professional Conduct as alleged by the Board in its complaint. A party's stipulation as to a violation of the Iowa Rules of Professional Conduct does not bind us. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey,* 790 N.W.2d 801, 804 (Iowa 2010). As we have previously stated,

> Nowhere in our rules have we given the parties the authority to determine what conduct constitutes a violation of our ethical rules or what sanction an attorney should receive for such violation. The parties to a disciplinary proceeding cannot substitute their judgment as to what conduct constitutes a violation of our ethical rules or what sanction we should impose for such a violation. The constitution and our court rules vest this function solely in our court. Accordingly, to allow the parties to make these determinations is against the public policy surrounding our attorney disciplinary system.

*Id.* Accordingly, we will not find an attorney violated the Iowa Rules of Professional Conduct unless a factual basis exists in the record to support such a violation. *See id.*

**II. Findings of Fact.**

On our de novo review, we find the following facts. We admitted Joseph M. Haskovec to the Iowa bar in 1985. Haskovec currently serves as a magistrate for Howard County, a part-time position he has held since 2012. Haskovec also has a solo practice in Cresco; however, his solo practice makes up only a small portion of his work. Prior to his appointment as a magistrate, Haskovec worked part-time as the Howard County attorney for twenty-seven years. The events giving rise to the

present complaint occurred while Haskovec was serving as a part-time county attorney, but acting as a private practitioner.

Haskovec is part of a large family, which began feuding decades ago. Family members put Haskovec in the middle of this feud when they asked him to draft a new will for one of his aunts, Edith Benson. Benson had previously executed a will and power of attorney documents in 2005, naming her nephew, Kenneth M. Bronner, as the executor of her estate and his son, Kenneth R. Bronner, as her power of attorney.

On July 6, 2010, Haskovec, Benson, and Benson's sister, Elsie Pint, met for two hours at Benson's home to discuss the provisions of a new will, a new power of attorney, and a new durable power of attorney for health care decisions. Haskovec and Benson discussed removing certain family members from Benson's will and naming new individuals as her power of attorney and durable power of attorney for health care decisions. Haskovec, Benson, and Pint also discussed how to change the beneficiaries on Benson's Ameriprise Financial account. Haskovec did not change the beneficiaries on this account. Rather, he advised Benson to speak with the financial agent on the account to determine the proper way to make that change.[1]

On July 8, Haskovec returned to Benson's home to execute the new documents. She designated new beneficiaries and a new executor.[2] Haskovec and Pint were with Benson when she executed the will, and Haskovec signed the will as a witness. For some unknown reason, Pint

---

[1]Ultimately, Pint and Benson did make the change to the beneficiaries on Benson's Ameriprise account, which became the subject of later litigation.

[2]The power of attorney and durable power of attorney for health care decisions are not at issue in this case.

did not sign the will as a witness. The will was not a self-proving will because Haskovec did not use self-proving wills in his practice.

In early August, Benson's health began to fail and she entered the Cresco hospital. It was at that time other family members discovered the changes Haskovec had made to Benson's will and power of attorney documents. The hospital where Benson was admitted notified Benson's great-nephew, Kenneth R., and his wife, Terri Bronner, that other family members were trying to move Benson out of her local hospital. After learning from family member Susan Randall that Benson had named Randall as her new power of attorney and executor under the 2010 documents, Kenneth R. went to Haskovec's office to question him about the changes to the will.

When questioned by Kenneth R., Haskovec confirmed he had written the new will and other documents executed by Benson. After this discussion Haskovec reviewed the will and discovered that Pint, who had been present at the execution of the will, did not sign the will as a witness. Soon after discovering Pint had not signed the will, Haskovec consulted the Iowa Code and noted that for a will to be valid, two witnesses must sign it in the presence of the testator and each other. *See* Iowa Code § 633.279(1) (2011). Though Haskovec recognized Benson's will did not meet this requirement, he thought there might be some legal argument a probate attorney could make to save the will.[3]

Prior to Benson's death, he sent the will to Arizona for Pint to sign the will as a witness. Pint then signed the will pursuant to Haskovec's instructions and returned it to his office.

---

[3]At the commission hearing, Haskovec failed to disclose what that argument would be.

On August 26, Benson passed away. In mid-September, Haskovec gave the 2010 will to Randall so she could probate it. Haskovec did not disclose to Randall the fact that Pint signed the will outside the presence of himself and the testator. Randall took the will to another attorney, Michael Dunbar, so he could open an estate.

After receiving the will, Dunbar sent Haskovec an Affidavit of the Subscribing Witness. After receiving the affidavit, Haskovec contacted Dunbar. Haskovec readily admitted he had sent the will to Pint for her signature, as she had not signed it on the same day as he and Benson had. He informed Dunbar he would not sign the affidavit because the statements in it were not accurate. Dunbar then informed Randall the will was invalid and he could not probate it. Another attorney, Brian McPhail, ultimately probated the 2005 will.

On October 13, 2014, the Board filed a complaint against Haskovec alleging violations of rule 32:4.1(b) ("In the course of representing a client, a lawyer shall not knowingly . . . fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by rule 32:1.6.") and rule 32:8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."). Iowa Rs. Prof'l Conduct 32:4.1(b), 32:8.4(c).

The Board, in its hearing brief filed with the commission, argued Haskovec was representing Randall when he gave her the will and then failed to disclose to her the issue with Pint's signature. However, we find the Board failed to prove by a convincing preponderance of the evidence Randall was Haskovec's client. Haskovec only gave Randall the will. He provided no legal advice to her and did not probate the will for her. We

find the only client Haskovec represented concerning this matter was Benson.

The commission found that Haskovec violated rules 32:4.1(b) and 32:8.4(c). The commission recommends we give Haskovec a public reprimand for this conduct rather than a suspension because his disclosure to attorney Dunbar "prevented any fraud or dishonesty from being perpetrated on the Court or the public."

### III. Ethical Violations.

**A. Rule 32:4.1(b).** Rule 32:4.1(b) provides:

> In the course of representing a client, a lawyer shall not knowingly:
>
>  . . . .
>
> (b) fail to disclose a material fact to a third person when disclosure *is necessary to avoid assisting a criminal or fraudulent act by a client*, unless disclosure is prohibited by rule 32:1.6.

*Id.* r. 32:4.1(b) (emphasis added).

The plain language requires that, in order for an attorney's failure to disclose a material fact to violate this rule, disclosure must be necessary for the attorney to avoid assisting his or her client in perpetrating a crime or fraud. *See id.*; *see also* 2 Geoffrey C. Hazard, Jr., et al., *The Law of Lawyering* § 40.07, at 40-16 (4th ed. 2015) ("[The attorney] must have known . . . that the client was indeed engaged in a criminal or fraudulent act."); Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series: Lawyer and Judicial Ethics* § 8.1(d), at 771 (2015) ("Importantly, Rule [32:]4.1(b) is implicated only if the lawyer has become involved (presumably unwittingly) in the client's criminal or fraudulent scheme, in such a way that the lawyer would be 'assisting' the client by remaining silent after discovery of the client's wrongdoing."). Here, the

Board did not prove Randall was Haskovec's client. The record only establishes that Haskovec's client in this matter was Benson. There is no evidence in the record Benson was attempting to commit a criminal or fraudulent act when Haskovec drafted her will. Haskovec's act of giving the will to Randall, the named executor, after his client had died did not assist his deceased client in perpetrating a criminal or fraudulent act.

We have previously found a violation of rule 32:4.1(b) in cases in which the attorney's client engaged in a fraud or crime with the attorney's assistance. In *Iowa Supreme Court Attorney Disciplinary Board v. Bieber,* we found an attorney who assisted his client in misrepresenting the actual sales price of real estate in order to obtain a cash-back payment from the lender violated rule 32:4.1(b). 824 N.W.2d 514, 517, 519–20 (Iowa 2012). The client's conduct in listing the selling price as greater than the actual price paid for the property was fraudulent; therefore, the lawyer's drafting and delivering the documents knowing they provided false information regarding the price assisted his client in fraudulent action. *Id.* Because he knew his client was providing false information, the lawyer had an obligation to disclose the misrepresentations to the lender. *See id.* at 520.

In *Iowa Supreme Court Attorney Disciplinary Board v. Engelmann,* we also found a violation of rule 32:4.1(b). 840 N.W.2d 156, 161–62 (Iowa 2013). Again, the client falsified information on real estate sales paperwork, and the attorney assisted in the client's fraudulent activity by preparing the documents and failing to disclose the fraudulent information to his client's lenders. *Id.* at 158–59, 161–62.

Here, there is no evidence Benson, Haskovec's client, was committing a crime or fraud by executing her will. Even though Haskovec stipulated that he violated rule 32:4.1(b), we find no factual

basis in this record to support a finding that Haskovec violated rule 32:4.1(b). Therefore, upon our de novo review, we find Haskovec did not violate rule 32:4.1(b).

**B. Rule 32:8.4(c).** The commission found that by sending the will to Pint for her signature after the execution of the will and allowing Randall to take the will without informing her of this issue, Haskovec violated rule 32:8.4(c). Rule 32:8.4(c) provides "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c).

"To violate [rule 32:8.4(c)], a lawyer must act with some level of scienter" and not simply negligence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 462 (Iowa 2014). An attorney–client relationship need not exist between the attorney and the person the attorney is dealing with at the time of the attorney's dishonesty, fraud, deceit, or misrepresentation for an attorney to violate this rule. *See Comm. on Prof'l Ethics & Conduct v. Mollman*, 488 N.W.2d 168, 171 (Iowa 1992) (interpreting DR 1–102(A)(4), the predecessor to rule 32:8.4(c)). An attorney may commit a violation of this rule when he or she fails to disclose a material fact. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 531 (Iowa 2011) (finding a violation of rule 32:8.4(c) when an attorney failed to inform his client the bankruptcy court had terminated his bankruptcy practice). Honesty is necessary for the legal profession to function. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lane*, 642 N.W.2d 296, 300 (Iowa 2002). When dealing with a violation of rule 32:8.4(c), the key question we must answer is whether the effect of the lawyer's conduct is to mislead rather than to inform. *See Comm. on Prof'l Ethics & Conduct v. Baudino*, 452 N.W.2d 455, 458 (Iowa 1990) (interpreting DR 1–102(A)(4), the predecessor to rule 32:8.4(c)).

In regards to the execution of a will, the Iowa Code provides:

> All wills and codicils, except as provided in section 633.283, to be valid, must be in writing, signed by the testator, or by some person in the testator's presence and by the testator's express direction writing the testator's name thereto, and declared by the testator to be the testator's will, and witnessed, at the testator's request, by two competent persons who signed as witnesses in the presence of the testator and in the presence of each other; provided, however, that the validity of the execution of any will or instrument which was executed prior to January 1, 1964, shall be determined by the law in effect immediately prior to said date.

Iowa Code § 633.279(1).

The attestation clause of Benson's will mimicked the formal requirements for the valid execution of a will contained in section 633.279(1) and stated:

> And now, on this 8th day of July, 2010, the forgoing instrument, consisting of two pages including this page, was in our presence signed and executed by Edith Benson and by her declared to us to be her Last Will and Testament, and at her request *and in her presence and in the presence of each other,* we have subscribed our signatures as witnesses hereto.

(Emphasis added.)

Regarding Haskovec's conduct in having Pint sign the will outside the presence of the testator and the witness, the record establishes by a convincing preponderance of the evidence that Haskovec knew for a will to be valid it must be signed by the testator and the witnesses in the presence of each other. Haskovec knew when he sent the will for Pint's signature that he was asking her to sign a legal document containing a false statement because she would not be signing the will in the presence of the testator and the other witness. He intended her to sign the will despite the false statement in the attestation clause. He also failed to disclose to Pint that her signature might not be valid because she did not

sign it in the presence of the testator and the other witness or that she was falsifying a document intended to be filed with the court.

In regards to Haskovec giving the will to Randall without disclosing it did not meet the formal requirements of the Code even though the attestation clause stated otherwise, the record establishes by a convincing preponderance of the evidence Haskovec knew the will was not valid, but failed to disclose that fact to Randall. He also knew Randall did not ask him to probate the will. Thus, he had to know either that Randall was going to ask another attorney to probate an invalid will or that she was going to file an invalid will with the court pro se.

We find the evidence establishes by a convincing preponderance of the evidence Haskovec's conduct had the effect to mislead rather than to inform. We also find the evidence establishes he had the intent to mislead Pint when he asked her to sign the will. Furthermore, he had the intent to mislead Randall when he gave her the will without disclosing its deficiencies. Accordingly, we agree with the commission that Haskovec violated rule 32:8.4(c).

### IV. Sanction.

In deciding the proper sanction,

> "we consider the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public. We also consider aggravating and mitigating circumstances present in the disciplinary action."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell,* 726 N.W.2d 397, 408 (Iowa 2007) (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen,* 723 N.W.2d 806, 810 (Iowa 2006)) (internal quotation marks omitted). Additionally, we attempt "to achieve consistency with our prior cases when determining the proper sanction."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010). "The goal of our disciplinary system is 'to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering.'" *Id.* at 770 (quoting *Powell*, 726 N.W.2d at 408).

We cannot find an Iowa disciplinary case with similar facts. However, in a disciplinary case involving an attorney attempting to probate a will when he knew the signature of the witness was forged, we imposed a sixty-day suspension for the attorney's violation of rule 32:8.4(c). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Liles*, 808 N.W.2d 203, 207 (Iowa 2012). In another case in which an attorney forged a judge's signature on an order that the judge had approved but failed to sign and then filed the order with the court, we imposed a public reprimand for the attorney's violation of rule 32:8.4(c). *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Newman*, 748 N.W.2d 786, 787, 788–89 (Iowa 2008).

We do note, however, that Haskovec did not forge a signature but rather sent a document to a witness to sign, which is not as egregious as the conduct in either *Liles* or *Newman*. Further, Haskovec immediately and without hesitation disclosed to Dunbar that Pint did not sign the will in the presence of the testator and the other witness without any probing by Dunbar or the court. Additionally, Haskovec does not have a prior disciplinary record and has spent most of his career in public service. Lastly, Haskovec's disclosure to Dunbar came before Dunbar attempted to probate the will and, therefore, caused no harm to the courts or the public. These all serve as mitigating circumstances.

After considering the nature of Haskovec's conduct, the mitigating circumstances, and the need to protect the public and the reputation of

the bar, we conclude a public reprimand is the appropriate sanction for Haskovec's violation of rule 32:8.4(c).

### V. Future Stipulations Filed Concerning Iowa Rules of Professional Conduct Violations and Sanctions.

As we previously discussed in this opinion, we are not bound by the parties' stipulations as to whether a violation of the Iowa Rules of Professional Conduct has occurred or what sanctions ought to be imposed. *See Gailey*, 790 N.W.2d at 804. However, we do find such stipulations to be helpful in narrowing the issues and highlighting the facts supporting a violation or sanction. Thus, when the parties stipulate to a rule violation, the stipulation for each violation must be contained in a separate paragraph that includes supporting facts sufficient to allow us to find a factual basis for concluding a violation of a rule occurred. When the parties stipulate to a sanction, the stipulation must be contained in a separate paragraph supported by citations to our prior decisions and a discussion as to why our prior decisions support such a sanction.

These requirements for stipulations shall apply to all stipulations entered into by the parties after the date we file this decision.

### VI. Disposition.

For the above reasons, we agree with the recommendation of the committee and publicly reprimand Haskovec for his conduct. We tax the costs of this proceeding to Haskovec in accordance with Iowa Court Rule 35.27(1).

**ATTORNEY REPRIMANDED.**

All justices concur except Hecht, J., who takes no part.