# IN THE SUPREME COURT OF IOWA

No. 20–0472

Submitted July 14, 2020—Filed September 11, 2020

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JESSE MICHAEL MARZEN,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends a public reprimand for attorney's violation of ethical rules. **LICENSE SUSPENDED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode and Crystal W. Rink, Des Moines, for complainant.

James Steadman Blackburn of the Finley Law Firm, Des Moines, for respondent.

**OXLEY, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (the Board) brought a complaint against attorney Jesse Marzen arising out of his representation of a couple involving two different matters. The first matter involved his work in preparing income tax returns for the couple's business, and the second matter involved his transfer of an estate matter to another attorney without the client's prior consent. The Iowa Supreme Court Grievance Commission (the commission) found the Board proved Marzen violated most, but not all, of the cited rules.

The commission recommends we publically reprimand Marzen, a discipline Marzen supports. The Board urges us to suspend his license for some period of time. On our de novo review, we conclude Marzen violated our ethical rules. We agree with the Board that his conduct justifies more than a public reprimand. Therefore, we suspend Marzen's license for thirty days.

## I. Background Facts and Proceedings.

Attorney Jesse Marzen was admitted to practice law in Iowa in 2005. He was previously disciplined in 2010 after he had a sexual relationship with a client and disclosed confidential information about the client during his campaign for county attorney, which resulted in a six-month suspension of his license. Marzen resumed practice in March of 2012. Currently, Marzen is not practicing law or taking on clients, but his license is still active.

The complaint in this case arose from Marzen's representation of Lloyd and Linda Pierson. The Piersons started a business buying and reselling classic cars after Lloyd received a large inheritance from his stepfather. Lloyd knew Marzen's father for many years, so he asked Marzen for help with the business. In 2014, Marzen set up three limited

liability companies for the Piersons. The Piersons later asked Marzen to do other work for them, including tax work for their business and work on Lloyd's biological father's estate.

**A. Estate Work.** Lloyd Pierson hired Marzen to handle the estate of his biological father, Cecil Pierson, in 2015. The estate involved a small amount of property and a Medicaid lien. Marzen did not timely file the estate inventory report and received a delinquency notice from the court dated June 1, 2015. Faced with this delinquency notice, Marzen contacted Roger Sutton, another Charles City attorney, about handling Cecil Pierson's estate. Marzen testified he communicated primarily with Amy Medlin, Sutton's paralegal. He then sent a letter, dated June 8, 2015, to the Piersons explaining that someone named "Amy" would be assisting on the case. The letter said,

> Marzen Law Office has expanded. D[ue] to this exp[ansion], we have hired Amy to assist Marzen Law Office with some of our files. Cecil's estate has been one of those files she will be assisting with.
>
> In the near future, Amy will be in touch with you regarding the estate. Please answer any and all questions she may have concerning Cecil's Estate.

Marzen testified he originally intended to hire Medlin to work for his office on a contract basis. When this arrangement did not work out, Marzen testified he transferred the case to Sutton, who entered an appearance and finished the estate work.

The same day Marzen sent a letter to the Piersons, he sent a flash drive containing his file on Cecil Pierson's estate to Sutton's office, directed to Amy Medlin. The flash drive contained "what Mr. Marzen had in his file up to that point."

Marzen testified he told either Sutton or Medlin that Lloyd consented to transferring the estate case to Sutton's office. Sutton testified that

Marzen told him he had Lloyd's written consent to transfer the file. Yet, no such consent appears in the record, Sutton never saw any evidence of it, and Lloyd disputes ever having given consent to the transfer. Indeed, Sutton was leery about whether Lloyd had consented to the transfer based on Sutton's previous work on Lloyd's stepfather's estate. Lloyd had hired Sutton to handle the large estate and was unhappy when Sutton sought, and was granted, the statutory attorney fee award. After receiving Cecil Pierson's estate file from Marzen on June 8, 2015, Sutton contacted the Piersons, who were surprised the file had been transferred. Lloyd testified he was not happy about the transfer but "didn't think there was anything [he] could do about it." Lloyd ultimately consented to Sutton handling the estate work, which was completed without further issue.

**B. Tax Work.** In September 2016, the Piersons approached Marzen about completing their personal and business tax returns for 2014 and 2015, which had not been filed and were delinquent. The Piersons had hired a certified public accountant and were frustrated he had not begun work on the project. Marzen agreed to complete the Piersons' delinquent 2014 and 2015 tax returns and to prepare their 2016 returns. The fee agreement authorized Marzen to charge $200 per hour but did not authorize interest on overdue amounts.

Marzen quickly realized the project would take a lot more time than anticipated. The Piersons failed to keep detailed records for their business and used the same bank accounts and credit cards for both personal and business activities. Over time, they brought boxes of documents that Marzen and his assistant, his wife Kari Marzen, combed through in an attempt to recreate the Piersons' nonexistent books. Marzen requested additional records to fill gaps identified from the records, but the Piersons failed to provide all the documents to support the needed information,

including the cost of some of the vehicles purchased for resale and numerous expenses.

In January 2017, Marzen recommended a banker for the Piersons to contact about a loan for their business. The Piersons repeatedly requested financial statements and tax returns from Marzen to provide to the bank, and Marzen told the Piersons the financial statements were incomplete based on the missing documentation. Ultimately, Marzen prepared tax returns for 2014, 2015, and 2016, which the Piersons signed in Marzen's office on April 14, 2017. Marzen knew the Piersons needed the business tax returns for the bank. Marzen had the Piersons sign the tax returns despite knowing they significantly understated the cost of goods sold for the classic automobiles, among other items, given the lack of information from the Piersons. The Piersons provided the tax returns completed by Marzen to the bank on April 21, 2017.

Without consulting the Piersons, Marzen hired Amanda Conley, an accountant, in late April 2017 to help finalize amended Form 1065 partnership returns for 2014 through 2016 based on additional records the Piersons brought to Marzen in mid to late April, after Marzen had mailed the incomplete returns to the Internal Revenue Service (IRS). The Piersons did not learn of Conley's work until after she had completed it. Marzen paid Conley $300 for the approximate fifteen hours of work she performed, testifying he paid that bill himself and did not pass it on to the Piersons. Marzen testified his work on the project stalled in May 2017 from a lack of further documentation from the Piersons.

Marzen's monthly bills to the Piersons totaled $32,830 for approximately 164 hours' worth of work on the business records and tax return project between September 2016 and May 2017. The Piersons paid lump sums toward their bill, including $7210 in September 2016 and

$10,000 in July 2017.  Marzen charged interest at 18% on monthly invoices that were not paid within fourteen days of the respective due dates.  The commission determined the outstanding balance on the Piersons' account, exclusive of interest, was $15,620.  By October 2017, the Piersons questioned the size of the bill, and they filed this complaint in December 2017.  Marzen wrote off the balance.

The parties disputed whether Marzen filed the Piersons' tax returns in April 2017.  Kari Marzen testified she put the personal and business tax returns in the mail on April 17, 2017, in three different envelopes, two addressed to the IRS and one to the Iowa Department of Revenue (IDOR).  Marzen admitted into evidence a mailing affidavit Kari Marzen regularly completed in the course of her work, identifying the three envelopes as part of the outgoing mail on that date.  Ms. Marzen also testified she specifically recalled mailing the tax returns because it was a milestone in a large project.  Nonetheless, none of the three envelopes reached their destinations, and the Piersons' business and personal tax returns for 2014, 2015, and 2016 were not actually filed at that time.

Marzen admits the returns he attempted to file were incomplete, referring to them as "junk" during the hearing, and required amendments.  He testified he nonetheless mailed them on the April 17, 2017 filing deadline to minimize late filing penalties.  Marzen was unable to reproduce copies of the signed returns, explaining he thought he could access the returns from his computer software and failed to keep a copy of the signed returns he gave to the Piersons.

In spring 2018, the Piersons hired attorney Todd Prichard to assist with the probate of Linda's father's estate and to assist with a foreclosure proceeding against their home.  At some point, it was learned that the Piersons' tax returns for 2014, 2015, and 2016 had not been filed.  In July

2018, Prichard requested a transcript from the IRS of the Piersons' personal tax returns for 2014 through 2016 and learned the IRS had not received the returns. Prichard requested Marzen send the Piersons' file to him and, like Marzen, spent significant time recreating the Piersons' business records from the boxes of unorganized information. Prichard filed the Piersons' 2014 and 2015 personal and business returns and, at the time of the hearing, was working on completing and filing the Piersons' subsequent tax returns.

## II. Standard of Review.

"We review attorney disciplinary matters de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 933 N.W.2d 206, 213 (Iowa 2019). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Earley*, 933 N.W.2d at 213.

"We give the commission's findings, conclusions, and recommendations respectful consideration, 'especially with respect to witness credibility,' but we are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 192 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 847 N.W.2d 489, 492 (Iowa 2014)). "We may impose a sanction that is greater or lesser than that recommended by the commission." *Id.*

## III. Violations.

The Board alleged Marzen violated a number of our rules of professional conduct. The commission concluded Marzen committed some, but not all, of the violations identified by the Board.

**A. Count One.** Count one involved Marzen's work on the Piersons' business records and tax returns. The Board alleged four rule violations associated with this work. We discuss each in turn.

1. *Rule 32:1.4(a)(2).* Iowa Rule of Professional Conduct 32:1.4(a)(2) requires that "[a] lawyer shall . . . reasonably consult with the client about the means by which the client's objectives are to be accomplished." The commission determined Marzen violated this rule by engaging an outside accountant, Conley, without obtaining advance consent from the Piersons.

The comment to rule 32:1.4(a)(2) provides that "[i]n some situations—depending on both the importance of the action under consideration and the feasibility of consulting with the client—this duty will require consultation prior to taking action." Iowa R. Prof'l Conduct 32:1.4 cmt. [3]. Even in exigent circumstances, "the lawyer must nonetheless act reasonably to inform the client of actions the lawyer has taken on the client's behalf." *Id.*

While there may be some circumstances in which hiring an outside accountant to assist with tax work the client hired the attorney to perform would violate this rule, the Board failed to prove this was one of them. Marzen performed the bulk of the work of compiling the business records and prepared the initial tax returns given to the Piersons on April 14, 2017. While those returns were admittedly incomplete, and therefore inaccurate, the incompleteness was due to lack of information from the Piersons. When the Piersons brought additional documents in the following weeks, Kari Marzen informed them the materials were being sent out of the office. Conley worked approximately fifteen hours over a period of two to three weeks in April and May 2017 and provided drafts of updated Form 1065 returns based on the additional documentation from the Piersons. Notably, the Board did not prove that Marzen passed Conley's $300 fee on to the Piersons or that Conley performed any legal work. This is not the type of conduct we have previously found to violate this rule. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner,* 918 N.W.2d 130, 145

(Iowa 2018) (attorney's failure to inform clients he would not represent them at bankruptcy hearings violated rule 32:1.4(a)(2)).

Although Marzen provided sensitive information about the Piersons' business to a third party outside of his office, the Board alleged that Conley's involvement violated only rule 32:1.4(a)(2)'s requirement to consult with clients about the means of accomplishing their objectives. Where Conley performed limited work and Marzen did not pass her fee on to the Piersons, the rule did not require Marzen to consult with the Piersons before hiring Conley.

2. *Rule 32:1.5(a).* Iowa Rule of Professional Conduct 32:1.5(a) declares that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses, or violate any restrictions imposed by law." The commission found Marzen's $200 per hour rate and the amount of time spent on the project were reasonable. Although the Piersons ultimately took their tax work elsewhere, the record supports the commission's finding that Marzen performed significant work in an attempt to make sense of the disorganized business records required to prepare the Piersons' tax returns. Considering the deference we give to the commission, *see Noel*, 933 N.W.2d at 192, we agree the $200 per hour rate and the number of hours billed were not unreasonable.

The commission nonetheless determined Marzen violated the rule by charging 18% interest when the fee agreement did not authorize interest charges. Marzen conceded he violated this rule by charging unauthorized interest. "[W]e are not bound by an attorney's stipulation to a disciplinary violation . . . ." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Suarez-Quilty*, 912 N.W.2d 150, 157 (Iowa 2018). Instead, we evaluate the facts independently to determine whether Marzen violated the rule. *See id.*

On our review, we agree Marzen violated rule 32:1.5(a). Generally, "[a]n attorney cannot assess finance charges when the attorney collects a fee, unless the client agrees in writing in advance to the finance charges imposed." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 404 (Iowa 2007). Even without an agreement, an attorney may apply finance charges on the unpaid balance of an accounts receivable if he complies with the notice requirements contained in Iowa Code section 535.11. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. McKittrick*, 683 N.W.2d 554, 560 (Iowa 2004). While the parties do not address whether Marzen's invoices complied with the finance charge provisions of chapter 535, on our de novo review, we conclude they did not. *See* Iowa Code § 535.11(2)(*b*) (2017) (requiring, for transactions not subject to Truth In Lending, written notice at time debt arises and disclosure of finance charge rate and date before which payment must be received to avoid finance charge); *see also* 15 U.S.C. § 1603(1) (2012 & Supp. V 2017) (exempting transactions extending credit primarily for business purposes from Truth In Lending). Some invoices in the record contain no notice of finance charges, for example, Invoices 2393 and 2333, and the only invoices in the record referencing interest were submitted to the Piersons after the original debt was due, for example, Invoices 2675 and 3338. Further, even if the notice on those invoices had been included on the original invoice sent when the debt was initially incurred, the notices failed to identify the date by which the finance charge could be avoided. The Board established that Marzen charged unauthorized finance charges in violation of rule 32:1.5(a).

3. *Rule 32:8.1(a).* Iowa Rule of Professional Conduct 32:8.1(a) declares that "a lawyer in connection with . . . a disciplinary matter, shall not . . . knowingly make a false statement of material fact." The

commission concluded the Board failed to prove Marzen knowingly made a false statement of material fact when he claimed he filed the Piersons' tax returns despite the fact the IDOR and IRS never received them.

This determination depends on an evaluation of credibility. We generally give deference to the commission when questions of credibility are involved, unless we are convinced by contrary evidence in the record the commission was incorrect. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mendez*, 855 N.W.2d 156, 169 (Iowa 2014). The Board argues Marzen made a misrepresentation in the course of this disciplinary proceeding by insisting he filed the tax returns.

The Board's position turns on semantics. It is clear that when Marzen claimed he filed the tax returns he meant that he placed them in the mail to the relevant taxing authorities. Marzen maintained throughout this proceeding that the returns were mailed despite neither taxing authority receiving them. Kari Marzen testified she specifically recalled mailing the tax returns because it was a milestone in a big project, and her testimony is supported by the contemporaneous mailing affidavit. Marzen's inability to produce a copy of the signed returns may be poor practice, but it does not in itself undermine the evidence showing the returns were mailed.

We are mindful of the standard for imposing attorney discipline. We agree with the commission that the Board failed to prove by a convincing preponderance of the evidence that Marzen knowingly made a false statement of material fact to the Board in violation of rule 8.1(a).

4. *Rule 32:8.4(c).* Iowa Rule of Professional Conduct 32:8.4(c) declares that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The commission determined Marzen violated this rule when he mailed tax

returns he knew to be incomplete and inaccurate to the IRS and the IDOR for filing and provided those same returns to the Piersons to present to the bank in support of their loan application.

"To violate this rule, a lawyer must act with some level of scienter, which means the misrepresentation must be more than a negligent misrepresentation." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 462 (Iowa 2014). We have found that an attorney violates this rule by making the misrepresentation to opposing counsel or to the court, *see id.*, but such a misrepresentation need not be so limited. "[T]he key question we must answer is whether the effect of the lawyer's conduct is to mislead rather than to inform." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 908 N.W.2d 217, 226 (Iowa 2018) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 211–12 (Iowa 2016)). "An attorney's 'casual, reckless disregard for the truth' also establishes sufficient scienter to support a violation of the rule." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Muhammad*, 935 N.W.2d 24, 38 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 656 (Iowa 2013)).

We agree with the commission that submitting tax returns known to be materially incomplete and inaccurate to the taxing authorities and giving the Piersons those returns to take to the bank in support of a loan application has the effect of misleading rather than informing and thus violates this rule. Marzen defends his actions as protecting the Piersons' best interests to avoid late filing penalties. Marzen repeatedly requested additional information from his clients, telling them in mid-April, "I can get something in for you, but these are junk. These are not right. You need to get me the information that I need." He testified he mailed the returns on the 2016 filing deadline without waiting for more complete

information "to put a Band-Aid on the bleeding, basically. The 2016 returns at least could be sent in on time, and they wouldn't have a failure to file penalty on that."

Marzen ignores that the returns required a signature affirming the information contained in the returns was "true, correct, and complete." Further, Marzen never provided amended returns to correct the known inaccuracies. We appreciate the position Marzen faced when his clients failed to provide the information required to complete the tax returns. But that does not excuse Marzen's actions of intentionally mailing materially inaccurate returns to the IRS and IDOR without following up with amended returns.

We are more troubled by the fact that Marzen mailed the inaccurate returns to the IRS for the specific purpose of providing them to the bank as filed tax returns to support the Piersons' loan application. Marzen testified that he mailed the incomplete returns to the IRS in part because "the tax returns they had to have had to be filed tax returns. . . . [T]he banker was requesting . . . filed tax returns for 2014, 2015, and 2016. I got something in for them so that they could go get their loan." This was not a matter of missing a few invoices to support a completely accurate return. Marzen testified he lacked information about the cost of the majority of the automobiles sold by the Piersons' business, leaving the returns to materially overstate the Piersons' income. Yet Marzen intentionally mailed the returns to the IRS at least in part so that his clients could present them to the bank as "filed returns" that purported to show an accurate reflection of their income. It is one thing to file tax returns with as much information as available to avoid late filing penalties; it is another altogether to do so in order to provide clients with "filed returns" to give the bank in support of a loan application. Rule 32:8.4(c)

imposes an ethical obligation on an attorney to say no to his clients when complying with the request involves a known and material misrepresentation. Marzen violated rule 32:8.4(c).

**B. Count Two.** Count two involves Marzen's work on Cecil Pierson's estate. The Board alleged Marzen violated six rules associated with this count.

1. *Rule 32:1.4(a)(1)–(3).* Iowa Rule of Professional Conduct 32:1.4(a)(1) requires a lawyer to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in rule 32:1.0(e), is required by these rules." Rule 32:1.0(e) defines informed consent as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Iowa R. Prof'l Conduct 32:1.0(e). As explained above, rule 32:1.4(a)(2) requires a lawyer to reasonably consult with the client about the means of achieving the client's objectives. Iowa Rule of Professional Conduct 32:1.4(a)(3) requires a lawyer to "keep the client reasonably informed about the status of the matter." The commission found Marzen violated each of these subsections of rule 32:1.4 by transferring the Cecil Pierson estate file to attorney Sutton without the Piersons' consent.

The commission credited Lloyd Pierson's testimony that Marzen did not consult him before transferring Cecil's estate to Sutton's office. Giving deference to the commission's credibility determinations, *see Mendez,* 855 N.W.2d at 169, we see ample support for this conclusion. Sutton and Lloyd both testified the Piersons were surprised when Sutton contacted them to see if Marzen had sought Lloyd's consent to transfer the file, given their prior involvement. The June 8 letter Marzen sent to the Piersons

misleadingly stated Marzen had expanded his office and hired "Amy" to work for Marzen Law Firm. Marzen did not inform the Piersons that "Amy" worked for another law firm; nor did he seek their consent to transfer the file to another firm. Factually, we agree with the commission that Marzen transferred the file to Sutton without Lloyd's knowledge or consent.

We also agree with the commission this conduct violated rule 32:1.4(a)(1)–(3). The comments advise that ordinarily an attorney should obtain client consent before "retain[ing] or contract[ing] with other lawyers outside the lawyer's own firm" to provide or assist in providing legal services on a client's matter. Iowa R. Prof'l Conduct 32:1.1 cmt. [6]. Even more so, transferring a file to another attorney in a separate law firm requires informed consent, and doing so without informed consent violates rule 32:1.4(a)(1).

The attorney–client relationship is built on trust and confidence that is necessarily attorney-specific. An attorney who is unable to complete a matter cannot simply transfer the client's file to another attorney in a different firm without the client's knowledge and consent, and certainly not another attorney whom the client might be averse to using. Although an attorney may assist in facilitating a transfer, and we commend Marzen for recognizing the need for assistance to ensure the estate matter was timely administered, it is the client's decision whether to retain a different attorney in another law firm. The client must always make such foundational decisions about the attorney who represents him.

Likewise, transferring a file to another law firm necessarily changes the means by which the client's objectives are to be accomplished, requiring communication, the absence of which violates rule 32:1.4(a)(2). Finally, that the attorney hired to handle a case has transferred the file to another law firm is certainly relevant to the status of the matter and must

be communicated to the client under rule 32:1.4(a)(3). Marzen violated rule 32:1.4(a)(1)–(3) when he transferred the Cecil Pierson estate matter to attorney Sutton without Lloyd's consent.

2. *Rule 32:1.6(a).* Iowa Rule of Professional Conduct 32:1.6(a) declares that,

> A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b) or required by paragraph (c).

The commission concluded the Board failed to prove that Marzen violated this rule. The commission explained that Marzen transferred the filed pleadings to Amy Medlin at Sutton's office, noting Marzen had previously contacted Medlin to assist with the probate matter. The commission then noted that Marzen "did not disclose the filed pleadings, which are public record, to Roger Sutton or any other person." Yet, the commission also found that "Marzen transferred the estate file to Roger Sutton's office without the written consent of Lloyd Pierson." It is unclear whether the commission found this alleged violation was not proved because the disclosed file contained only filed pleadings or whether the commission believed Marzen was authorized to disclose the records to Medlin because he had hired her to assist with the matter. Either way, we disagree with the commission and conclude the Board proved that Marzen violated rule 32:1.6(a).

In *Iowa Supreme Court Attorney Disciplinary Board v. Mendez*, we held that an attorney's failure to obtain his client's consent to retain outside counsel to assist with court filings violated rule 32:1.6(a). 855 N.W.2d at 172. Our holding did not depend on whether the information disclosed to the retained counsel was confidential in nature or that the

outside counsel was also bound to maintain the client's confidences; it was enough that the attorney provided client information to outside counsel. *Id.* Rule 32:1.6 and its comments distinguish between discussions with other attorneys within a firm and attorneys outside the firm. *See, e.g.*, Iowa R. Prof'l Conduct 32:1.6(b)(7), cmts. [5], [13]. To the extent the commission based its finding on the fact that Marzen transferred the files to a paralegal he sought to hire, that fact is immaterial. Medlin was employed by a different law firm, and Marzen never actually hired her. An attorney may not disclose client information to outside counsel, or a paralegal who works for outside counsel—and certainly may not transfer a client file to another law firm—without obtaining client consent to reveal information about the representation as required by rule 32:1.6(a).

That the client file contained only filed pleadings does not protect Marzen from violating rule 32:1.6. The comments explain that "[t]he confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to *all information* relating to the representation, whatever its source." *Id.* r. 32:1.6 cmt. [3] (emphasis added). Indeed, we sanctioned Marzen in his first disciplinary case for violating rule 32:1.6(a) when he discussed a client's litigation with her probation officer during a media interview even though the disclosed information was contained in public court documents. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 765–66 (Iowa 2010) (*Marzen I*) (noting our conclusion was consistent with other jurisdictions). In *Marzen I*, we held for the first time "that the rule of confidentiality is breached when an attorney discloses information learned through the attorney–client relationship even if that information is otherwise publicly available." *Id.* at 766. We recognize there is a distinct difference between discussing a client's personal life with reporters and providing the

pleadings in an estate matter to another law firm in an effort to keep the case moving. But that is a difference in degree, not in kind. Marzen violated rule 32:1.6(a) when he transferred his file to Sutton's office without Lloyd's consent.

3. *Rule 32:4.1(a).* Iowa Rule of Professional Conduct 32:4.1(a) requires that "[i]n the course of representing a client, a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person." The commission found Marzen violated this rule when he told Sutton he had Lloyd's consent to transfer the Cecil Pierson estate file when he did not.

The term "third party" in rule 32:4.1 is broad. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill,* 885 N.W.2d 408, 421 (Iowa 2016). The rule makes no exception to its prohibition against making knowingly false statements just because the third party may know or believe the statement to be false. *Id.* at 422.

Whether Lloyd consented to Marzen transferring the estate matter to Sutton was material to whether Sutton would accept the representation, particularly given Sutton's prior experience with the Piersons. Having a client's consent is not a fact that is easily overlooked. Testimony from Sutton and Lloyd supports the commission's finding that Marzen told Sutton that Lloyd had already consented to the transfer when in fact he had not; Lloyd was unaware of the transfer until informed by Sutton. Whether or not Lloyd objected to the transfer, or even consented after-the-fact, Marzen's statement to Sutton was false when he made it. Marzen knowingly made a false statement of material fact in violation of rule 32:1.4(a).

4. *Rule 32:8.4(c).* As discussed above, "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty,

fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). The commission determined Marzen violated this rule by misrepresenting how he would handle the Cecil Pierson estate matter.

According to Marzen, he informed Lloyd he had hired "Amy" to work on the Cecil Pierson estate, so there was no misrepresentation. Marzen testified he intended to hire Amy Medlin as an independent contracting paralegal, but when the logistics did not work out, he transferred the file to Sutton to take over, collecting no fee for the work. Even if we found Marzen's explanation credible, he still failed to explain to the Piersons that Medlin was a paralegal employed by another law firm. Instead, he misrepresented to them that his office had hired "Amy" because it had expanded, implying that Amy Medlin was an employee of his law firm. Further, we find Marzen's explanation not credible, as he transferred the file to Sutton's office on a flash drive the same day he told the Piersons he had hired "Amy" and they should talk to her if she called about the estate case. We agree with the commission that Marzen misrepresented how the Cecil Pierson estate would be handled in violation of rule 32:8.4(c).

**IV. Sanctions.**

We have no uniform sanctions for particular misconduct. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bergmann*, 938 N.W.2d 16, 23 (Iowa 2020).

> In determining the appropriate sanction, we engage in a fact-based analysis and consider a number of factors, such as "the nature of the underlying violation, need to deter, public protection, protection of the reputation of the legal profession, and the [lawyer]'s fitness to practice law."

*Barry*, 908 N.W.2d at 227 (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thompson*, 732 N.W.2d 865, 867 (Iowa 2007)). "We also take into account mitigating and aggravating circumstances." *Id.*

When determining what sanction a particular case deserves, we attempt to harmonize past cases with the present case. *Id.*

**A. Review of Analogous Cases.** Marzen engaged in a range of misconduct with a corresponding range of sanctions. "Sanctions for charging and collecting unreasonable fees generally range from sixty days to two years." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 495 (Iowa 2018). Yet, this case is unique, as Marzen's violation relates only to his unauthorized charge of interest on a past due account. Marzen's usual practice was to charge interest; that it was not included in the fee agreement with the Piersons appeared to have been an oversight. Moreover, the Piersons never paid any interest and, in fact, never paid nearly half of Marzen's bill for the tax work project.

"Sanctions for attorney misconduct involving misrepresentation generally range from a public reprimand to a three-year suspension." *Barry*, 908 N.W.2d at 227. Many of our cases involving misrepresentation involve forging documents or lying to opposing counsel, clients, or the court. *See id.* at 227–31 (summarizing sanctions in Iowa cases involving misrepresentation by attorneys); *McGinness*, 844 N.W.2d at 465–66 (same). Examples of sanctions involving forgery include a one-year suspension when an attorney falsified pleadings and court orders provided to his clients over a fourteen-month period to cover up his failure to file a dissolution petition, *see Barry*, 908 N.W.2d at 223–27, and a public reprimand for an attorney with an otherwise exemplary record and good moral character who forged a judge's signature on an order the judge approved but inadvertently failed to sign, *see Iowa Supreme Court Attorney Disciplinary Board v. Newman*, 748 N.W.2d 786, 787–89 (Iowa 2008).

*Iowa Supreme Court Attorney Disciplinary Board v. Haskovec*, 869 N.W.2d 554 (Iowa 2015), involved misrepresentation without a forgery.

Haskovec prepared a new will for his aunt during a dispute between her children. *Id.* at 557–58. Shortly before the aunt's death, Haskovec realized the will was invalid because one of the witnesses had not signed it. *Id.* at 558. Haskovec had the witness sign it at that time, despite knowing she was required to sign in the presence of the testator and the other witness. *Id.* Haskovec's aunt passed away shortly thereafter, and Haskovec gave it to the new executor to probate. *Id.* When speaking with the other attorney hired to probate the estate, Haskovec admitted to the flaw in the will. *Id.* at 558–59. The aunt's previous will was ultimately probated, and the board brought an ethics complaint against Haskovec. *Id.* at 559. We concluded Haskovec's conduct violated rule 32:8.4(c) and publicly reprimanded him. *Id.*

Here, Marzen misrepresented to Sutton that he had Lloyd's consent to transfer Cecil Pierson's estate matter to Sutton. Separately, he made misrepresentations by attempting to file the inaccurate tax returns and, more significantly, providing them to the Piersons to give their bank as accurate reflections of their income. We conclude these misrepresentations were more limited than in *Barry*, both in time and in subject matter. Yet, in *Newman* and *Haskovec*, the attorneys each made one serious error in judgment and quickly admitted the misrepresentation when confronted. Marzen's misconduct was not so isolated, nor is his record as exemplary.

**B. Aggravating and Mitigating Factors.** Before we determine the appropriate sanction, we must consider both mitigating and aggravating factors. The Board identifies several aggravating factors, including prior discipline, multiple rule violations, substantial experience practicing law, client harm, failure to take responsibility, and providing untruthful

testimony at the hearing. The commission considered only Marzen's prior discipline as an aggravator in recommending a public reprimand.

We agree with the commission that Marzen's prior six-month suspension is the primary aggravating factor in this case. "We use prior discipline as an aggravating factor because an attorney did not learn from his or her prior misconduct." *Noel*, 933 N.W.2d at 205. If the prior disciplinary action was based on the same or similar conduct, "[t]his factor is even stronger." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Goedken*, 939 N.W.2d 97, 108 (Iowa 2020). Although there are meaningful differences between revealing information to the media and revealing information to another attorney, we consider the two instances to be similar enough to be a relatively strong aggravating factor.

Additionally, "[m]ultiple rule violations are an aggravating factor." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 181 (Iowa 2019). In *Parrish*, we concluded the attorney's violation of five ethical rules was an aggravating factor. *Id.* at 167, 181. We consider Marzen's violation of multiple rules an aggravating factor.

We decline to find the other aggravating factors advanced by the Board. While substantial experience in the practice of law can be considered an aggravator, *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Jacobsma*, 920 N.W.2d 813, 819 (Iowa 2018) (considering twenty years of experience as an aggravating factor), inexperience can likewise be a mitigating factor, *see Turner*, 918 N.W.2d at 155 ("Even before we adopted the rules of professional conduct, we considered inexperience to be a mitigating factor."). Marzen had been practicing just over ten years at the time of the events at issue. While certainly not inexperienced, neither would we consider Marzen so seasoned to warrant enhancing his

discipline. We consider Marzen's ten years' experience neither aggravating nor mitigating.

Similarly, while harm to a client can be an aggravating factor, *see Turner*, 918 N.W.2d at 154, "[l]ack of harm to clients 'is a significant mitigating factor.'" *Goedken*, 939 N.W.2d at 109 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 110 (Iowa 2012)). Here, Sutton promptly completed the Cecil Pierson estate, and the Piersons never voiced their displeasure to Marzen. With respect to the tax work, the Piersons were not harmed by the unauthorized finance charges as they paid none of the interest. While the Piersons paid Prichard to essentially redo the tax work completed by Marzen, they paid only half of Marzen's legal fees, which the commission found to be not unreasonable. The only harm identified by the Piersons was the stress of dealing with the IRS based on the unfiled returns, but that harm is not attributable to any of the founded ethical violations. The minimal harm to the Piersons is neither aggravating nor mitigating.

We reject the Board's arguments that Marzen's failure to take responsibility for his actions and his untruthful testimony at the hearing should be considered additional aggravating factors. First, we found that Marzen did not provide untruthful testimony at the hearing, so that factual basis does not exist. With respect to whether Marzen accepted responsibility, we recognize that an attorney is entitled to defend his actions in a disciplinary proceeding without fear that doing so will be considered an aggravating factor if he is found to have violated our ethics rules. While we are troubled by Marzen's misrepresentation to Sutton that Lloyd had provided written consent to transfer the estate file and by Marzen's willingness to mail known inaccurate tax returns to the IRS, Marzen provided plausible, albeit misguided, explanations for his actions.

This is not the type of "failure to acknowledge any misconduct [that] reflects upon his inability to conform his conduct to our rules of professional responsibility for lawyers." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Remer*, 646 N.W.2d 91, 96 (Iowa 2002). We trust that Marzen will conform his conduct in light of this disciplinary action.

Finally, the commission found the Piersons brought this complaint because they did not want to pay Marzen, which it considered a mitigating factor. Even if the Piersons did bring this complaint to avoid paying their legal fees, a client's motivation for bringing a complaint is not a mitigating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 182 (Iowa 2015). Rather, "a complainant's motives are irrelevant in lawyer disciplinary cases." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sunleaf*, 588 N.W.2d 126, 127 (Iowa 1999). We decline to consider the Piersons' motive for filing the complaint as a mitigating factor.

**C. Appropriate Sanction.** Based on Marzen's violations and the aggravating factors in this case, we agree with the Board that Marzen's license should be suspended, contrary to the commission's recommendation of a public reprimand. We are most troubled by Marzen's willingness to provide knowingly inaccurate tax returns for his clients to give to their bank in support of a loan application. This, coupled with Marzen's prior disciplinary record, warrants a thirty-day suspension.

**V. Disposition.**

In light of the above considerations, we suspend Marzen's license to practice law for thirty days from the date of filing this opinion. The suspension applies to all facets of the practice of law. Iowa Ct. R. 34.23(3). If he has any current clients, Marzen shall comply with the notification requirements of Iowa Court Rule 34.24. We tax the costs of this action to Marzen in accordance with Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**